Good morning. Vince Branca, Federal Defenders on behalf of Mr. Lopez. Mr. Lopez's conviction must be reversed because the district court introduced a certificate of nonexistence in violation of the Confrontation Clause. Now this issue was submitted last month in a panel before this court in U.S. v. Cervantes Flores, so I won't go over the merits of it, but simply argue harmless error in case that panel reaches what I feel is the appropriate decision is that it should have been suppressed. There should be no harmless error analysis in this case because the government has waived it. They have not briefed the issue of whether or not they could show beyond a reasonable doubt. But we are obliged under the Federal rules and under NADER, are we not, to consider whether a reversal is required, measured by whether the error, if any, is harmful? Actually, Your Honor, I disagree. This court has repeatedly stated that waiver principles apply to the government. So if they don't brief issues I'm not saying that they don't, but I'm also saying can't we, if we wish, look at a record and so responde say this makes absolutely no sense to reverse because everything that was encompassed within the CNR was testified to by the alien himself. Well, first of all, Mr. Lopez did not testify in this case. I fundamentally disagree with the facts of that. But perhaps the Court could use its discretion, but this Court could use its also discretion and use waiver principles against the government. And there have been cases where the government has not argued harmless error, and this Court has stated because the government didn't argue it, we are not going to reach that decision. So you have the authority to not reach the harmless error. I understand that, but I'm trying to be on that and saying if we wish to, why shouldn't we say here the defendant admitted to the Border Patrol agents that he didn't have permission to reenter, that he had no documents allowing him to do so, that he was a citizen of Mexico, which was stipulated, and the A file shows no paperwork indicating that he had permission to be here. As a matter of just common sense, you look at that, and you say what difference could the certificate of non-whatever it is. The answer is because CNR, sorry. What the statute requires is that the individual did not receive permission or that the individual did not receive the Attorney General's consent to reapply. That's the language in the statute. That is the direct language in this certificate of nonexistence, that they searched the records and there is no application to reapply. All the evidence that Your Honor just stated goes to whether or not he had permission to enter or be here in the United States, which is a fundamentally different question. So there is still this open area of whether or not the CNR was actually the only evidence directly on point to the element of the offense. Further, the government relied on this CNR heavily in its closing argument. It was the first thing that they even argued, and there should be some waiver principles implied in this case. The government had a chance to bring these facts to the court's attention to say we believe that in this case, even without this, we could have proven this beyond a reasonable doubt. They didn't. But moving on to the sentencing issues in this case, regardless of what position this court takes on the Amelink remand, which I believe the government is going to be requesting for additional briefing on that, I feel regardless of whether or not it is, there needs to be a full remand because there's two misapplications of the guidelines in this case. First, the district court should not have increased for 16 levels, and second, it erroneously held that it did not have the discretion to depart when it really did. Turning first to the enhancement, an offense that can be committed by mere touching using unlawful restraint by a show of authority is not a crime of violence under 2L2.2. Can I ask you a specific question with respect to that? I think, at least to me, it's pretty clear that California, the California statute is broader than Subpart 1 of the guidelines. I think that's clear also. So the question to me is Subpart 2, and what is meant by forcible sexual offense in context of our decision in, I don't know how to pronounce that either, I'm having, my tongue's having trouble today, Pereira? Pereira, I believe that's it. Where we said, and we have subsequently repeated it in Grand Boys, that all of the offenses listed in Subpart 2 are inherently crimes using force. How do we square that with holding the way you wish us to? Well, what those cases actually say is that, including a term that doesn't have an element, such as sexual abuse of a minor, that there is some inherent. Well, that's what it holds, but what they say is that every one of the offenses there inherently involves force, and they point, for example, to extortionate extension of credit, which we know doesn't involve force, physical force, and they say all of these offenses inherently involve force. And such so as would forcible sex offenses, because it uses the word forcible, prefacing it before sex offenses shows that this is forcible, using physical force to commit a sexual offense. Meaning if you took forcible out of it, it would be any sexual offense, meaning anything that didn't involve consent, conceivably, could then be the 16-level increase. But just because it won't meet the 16 doesn't mean that it won't meet the catch-all provision of, for example, an aggravated felony definition of crime of violence, meaning just because it has a substantial risk. That's what makes this section unique, is all other definitions of crime of violence have this catch-all that if the offense would produce a substantial risk of physical injury, then it can become a crime of violence. Well, when they amended these guidelines, I believe back in 2001, they took that catch-all out and they kept the word forcible sex offense. So you have to give meaning to the word forcible to have any meaning of sex offense. Otherwise, the language forcible. If you read the government's argument, okay, because it has an inherent risk, then you've taken force out of it, and the language is clear. They have to have force in there. The guidelines specifically kept it there. And you can also look to the career offender guidelines. Any time that this court has evaluated whether or not sex by fraud qualifies as a predicate offense for a career offender, they don't use the forcible sex offense, which is specifically enumerated also. They go and see, does it have an inherent risk of serious bodily injury? So that's just another opportunity to show that when the guidelines say forcible sex offense, it has to be forcible. And that's physical force. Mere succumbing to a show of authority is not enough. And with that, I'll reserve my two minutes for rebuttal. Good morning, Your Honors. May it please the Court. My name is Kevin Mulcahy. I represent the United States in this matter. First, as to the CNR and the harmless error issue, Mr. Brunkhaus is correct that other panels, in fact, we note that a panel in December into the Behena-Cardenas case first heard this issue with regard to the confrontation clause. I'm happy to answer questions regarding that, but I will address the harmless error analysis. Mr. Brunkhaus is correct. The government failed to brief this issue, and it should have done so. However, Your Honors are, as Judge Reimer indicated, free to approve a conviction below based on any reason supported by law. And here, confrontation clause issues are reviewed for harmless error. And if there was an error, and we submit there was not, it certainly was not harmful for a number of reasons, all of which Judge Reimer, Your Honors, indicated. I would note that with regard to the distinction that Mr. Brunkhaus has to make between the CNR and the review of the records undertaken by Ruth Jones in Washington, vis-a-vis the review of the alien file undertaken by the custodian of records testified to. The specific question was asked of the custodian of records in this case, and that specifically, is there, would any reference of an application for readmission appear in the A file? Answer, yes. If so, have you reviewed the A file, did you find any such permission? Answer, no. So that's in the excerpts of record on 80 and 81, and I think that clears up any doubt that this was harmless error. And also, obviously the admissions of the defendant on two different occasions in this case, both in the field and post-Miranda. And I think that's all I have to say.  Mr. Brunkhaus, again, correct, the government is requesting, with Your Honors' permission, a further briefing on the Ameline issue. And we would recommend, I know Mr. Brunkhaus has a vacation coming up, so we would recommend perhaps a 30 days out simultaneous briefing. We'll let you know whether we think we need it. Yes, Your Honor. I should suggest that we've got, I don't know, about 500 cases hanging around. Yes, Your Honor. I think we've been briefed up to here. Yes, Your Honor. And I think the Ameline issue is, that needs briefing. Your Honor, the Ameline issue arises strictly in footnote 8 of that decision. And there it indicated that this, that Ameline remand, limited remand, may not be appropriate when a non-constitutional error is involved. And here we submit there was no constitutional error, and therefore Ameline doesn't control this specific situation. And we would submit that when you're dealing with a non-constitutional error, the plain error analysis, the fourth prong. Well, if there were error in the application or understanding of the guidelines, that's an academic question anyway. Correct. So maybe what you ought to do is explain why there wasn't error, because as I indicated, at least to me, it appears that the California Penal Code section is broader than the guidelines. Yes, Your Honor. And I think the focus of the government's argument, the main argument, is that under forcible sex offense in subsection 2, this 243.4a falls squarely within that. Now, forcible sex offense, the government is not indicating that no force would be required. I mean, that would be, as Mr. Bunkow said, to read force right out of it. It's not that there was a risk of force in this case, in this statute that makes the government submit that as a plus 16, but what we have is there is an implied threat of force when an authority figure takes advantage of an individual under his or her control to commit a sexual act. This is an implied threat of force. And because of that, it falls as a crime of violence in this case. And specifically, the Grant case, which is cited by the defense, is something that the government believes instead of ---- Well, then, you're arguing that every sex offense that's penalized by whatever the California Code section is here, 243.4a, is necessarily a crime of violence? Yes, Your Honor. And that includes, let's say, for example, indecent exposure. No, Your Honor, because 243.4a requires a touching. And the touching combined with ---- Well, okay. Touching, indecently exposed. Okay. Again ---- Is the touch that's the implicit force or is it the sex aspect that's the implicit force? It is not the sex aspect that is the implicit force. It is the touching combined with the unlawful authority or unlawful restraint, excuse me. And that's where, with these two issues, with these, with the physical touching and the unlawful restraint, what you have is an individual who, the victims of these crimes are individuals who must have come to either a physical force, which was the case in the victim of Mr. Lopez's offense, or ---- We don't know that. I mean, we do know it. This is what makes this whole thing absurd. Correct. Because we know it was a nasty incident. Correct. But we don't know that. Correct. We have to put our, I forget which judge ---- And we can't go there. Correct. All right. So just based on the statute itself, how can you say that we know that it was a forcible offense? Because of the restraint ---- Because of the touching. Because of the unlawful restraint and the touching combined. And what I mean by that is there must be some physical contact, but that alone cannot be enough. But if the guy is a, for whatever the reason, has perceived authority over the victim, and it involves no physical, no violence, no physical restraint. Correct. It's all psychological. Correct. California allows conviction for it, but it would not qualify under the guidelines. Does it? I respectfully disagree. I believe that it does. It is that physical, psychological, excuse me, not physical, psychological force that results as the implied threat because this person is a figure of authority. The victims of these crimes, again, taking out any of the physical, when we're dealing with a nonphysical situation, they are subject to an unlawful restraint in that the person, the perpetrator of these crimes has one up on them. They have an authority on them. Doesn't it depend on what the authority is? Employer, employee, whatever. Correct. What has that got to do with force? It may have economic consequence, but it doesn't necessarily translate into physical force. It doesn't translate into a physical force, but a threat of force when an individual unlawfully restrains another. So you're saying that the guideline contemplates the use of psychological force. Yes. So any time so a man, a taller man or a shorter woman, even if there's no official that that implies force, even though there's no touching or anything else. If the individual is unlawfully restrained. So, for example, if they were backed into a corner, if they were the bigger man, you have to be unlawful. I mean, if you're convicted under. You're saying that the California statute would permit. Psychological force of that sort to qualify under the penal code and it qualifies under to the under grant. The answer to your question. I'm sorry. Yes. Yes. Is the answer to your question. OK, so you're saying that for purposes of the guidelines where it contemplates force, it's enough that the guy was taller than the woman and therefore got convicted under California law. There's no touching and there's no official restraint or anything. If the if being taller than or being or if the physical size difference or whatever, that difference was amounted to an unlawful restraint. How would we know it? How would we know it? Because of the conviction. Because of the conviction requires to forty three point four. It requires unlawful restraint. If the individual beyond a reasonable doubt had been proven to unlawfully restrained. The boss says you can't leave the building here. If you leave the building without submitting to my sexual advances, you're going to be fired tomorrow. That's an unlawful restraint. OK. And that's enough. Yes. That's our position that that's enough. All right. Counsel, I'd like you to comment on this government form that says you need permission within the first year. Is that still the government's form? My understanding and Mr. Bronco can feel free to correct me if I'm wrong, is that we no longer use that form. And hopefully we no longer use that form. It is certainly confusing at a minimum. You agree that the judge, if he had chosen to, could have used that as a factor in the departure? Yes, Your Honor. Certainly at the time of the sentencing, he could have. And certainly now he could have. That's abundantly clear. And we believe in looking at the totality of the sentencing hearing, reading it sort of cover to cover, believe that the judge did in fact consider this. I understand that the record is not crystal clear on this point. However, he did indicate there was a dialogue between counsel below and between the judge regarding this form and how sort of the judge was saying, well, I was correct on my decision not to allow you to proceed by estoppel as a result of this case. And that discussion was also involved in the discussion of whether or not a departure would be appropriate there. So we believe in the totality of the circumstances, reading this sentencing sort of cover to cover, this would be a situation where the judge did in fact consider that. It doesn't seem clear from the record, but it's kind of maybe beside the point anyway. Hopefully not from our perspective, but thank you very much, Your Honor. Thank you, counsel. Well, it does matter, unless you'd have to disagree with all my other arguments, because basically we would need a full remand to have the district court impose his discretion. And I'll read from his ruling, specific ruling on the combination of departures, departure requests. That most recent case really does preclude the form, Rodriguez, I think it was, that form from being utilized. He condemns that he relied on that form. However, case law indicates that in a criminal case, I believe the Rodriguez case, that is something I cannot be relied on. And he goes on to say, therefore. Substantive offense. Where does he get it? Is that in the sentencing context he's saying that? Yes, he's saying I cannot give the departure based on that case. As to going to the harmless heir for the certificate of nonexistence of record, even the excess of record that the government cites claiming that there was testimony of the specific application to reapply, that is not what the testimony was. He did reference that the application to reapply would be in the aid file. But the specific question that was asked, were you able to locate any information that he ever applied for permission to reenter the United States after his order to exclude? No, I was not. So the specific question of was there any evidence that he made application to reapply was not asked of the custodian. I'll submit. All right. Thank you, counsel, for your argument. And the matter just argued will be submitted. The Court will take a brief recess before hearing arguments. All rise. Stand for recess. Recess.
judges: B. Fletcher, Rymer, Fisher